***********
The Full Commission, based upon the record of the proceedings before Deputy Commissioner Douglas E. Berger, and the briefs and oral arguments on appeal reviewed this matter. Based upon their assignments of error, neither party has shown good ground to amend the holding of the Deputy Commissioner. On the issue of additional evidence, the Full Commission finds that the defendant has shown good ground in support of its Motion, which is HEREBY GRANTED, thereby admitting the medical records submitted to the Full Commission into the record. Additionally, some minor, non-substantive modifications have been made to the prior Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner on 23 May 2001 as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. The parties stipulate that all parties are properly before the Commission and that the Commission has jurisdiction of the parties and the subject matter.
3. The parties stipulate that all parties have been correctly designated and that there is no question as to misjoinder or nonjoinder of parties.
4. The parties to this action are subject to and bound by the North Carolina Workers' Compensation Act.
5. The plaintiff is a 37-year-old female and was employed by Gulistan Carpet Inc., in 1989.
6. At all times relevant hereto, the defendant was a qualified self-insured employer under the North Carolina Workers' Compensation Act with Hewitt Coleman Associates acting as the defendant's third party administrator.
7. The plaintiff's average weekly wage on the relevant dates herein was $344.30, yielding a compensation rate of $229.54.
8. A set of medical records contained in a brown folder was marked as Stipulated Exhibit (1), and received into evidence.
9. Subsequent to the hearing, Ms. Bagby's vocational report was marked as Stipulated Exhibit (2), and received into evidence.
10. Subsequent to the hearing, Dr. Brian S. Hissom's report was marked as Stipulated Exhibit (3), and received into evidence.
11. Subsequent to the hearing, additional testimony by the plaintiff was marked as Stipulated Exhibit (4), and received into evidence.
 *********** ADDITIONAL EXHIBITS
1. W-2 Forms for 1999 were marked as the plaintiff's Exhibit (1), and were received into evidence.
2. W-2 Forms for 2000 were marked as the plaintiff's Exhibit (2), and were received into evidence.
3. A Family Dollar Store check stub from 2001 was marked as the plaintiff's Exhibit (3), and received into evidence.
4. A list of the plaintiff's daily medications was marked as the plaintiffs Exhibit (4), and received into evidence.
5. A set of time cards was marked as the plaintiff's Exhibit (5), and received into evidence.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner on 23 May 2001, the plaintiff was a thirty seven (37) year old female who had completed her GED. At that time, the defendant had employed the plaintiff as a twister tender for approximately five years.
2. On 3 September 1994, the plaintiff sustained an admittedly compensable injury by accident. As a direct and natural result of her 3 September 1994 admittedly compensable injury, the plaintiff has undergone five (5) back surgeries. These surgeries included an April 1998 fusion surgery that involved the placement of Ray cages into the plaintiff's back.
3. Eventually, the defendant was unable to provide the plaintiff with employment given her restrictions, and terminated her employment. Beginning on 29 October 1997, vocational rehabilitation services were provided to the plaintiff. After three years of seeking work diligently, the plaintiff was able to obtain a part-time job as a cashier with a Family Dollar Store.
4. On 12 September 2000, Dr. Leon Dickerson authorized the plaintiff to return to work as a cashier at the Family Dollar Store. The job analysis approved by Dr. Dickerson included a statement by the plaintiff's supervisor, Ms. Vicki Rumple, that this employer agreed that the plaintiff would not have to perform work she did not believe she was capable of performing. Such liberal modifications of the plaintiff's job duties were permitted in part because Ms. Rumple had experienced back problems herself, and was therefore sympathetic with the plaintiff.
5. The Family Dollar Store modified the plaintiff's work schedule to permit her to have two days off for every two days she worked, so that the plaintiff could recuperate from the pain she experienced from working. During these periods of recuperation, the plaintiff took the hottest bath she could stand, and then laid on a heating pad. The plaintiff's pain was so severe, that she eventually scorched portions of her back from chronic use of a heating pad.
6. The plaintiff is unable to work in any employment due to the severity of pain she continues to experience. The plaintiff testified in detail regarding the difficulties of working at the Family Dollar Store due to the severity of her pain. At the time of the hearing, the plaintiff remained employed at the Family Dollar Store. However, following the hearing, the plaintiff was unable to continue working in that capacity as of 18 July 2001 due to her pain. Based upon a review of the plaintiff's medical history, her demonstrated strong work ethic as described by Ms. Rumple, and the Deputy Commissioner's observation of the plaintiff's at the hearing, the Deputy Commissioner found the plaintiff's testimony to be credible regarding her inability to continue working due to her pain. Having reviewed the entire record, the Full Commission finds no grounds to enter a contrary finding, and, therefore, finds the plaintiff's testimony to be credible.
7. Even assuming that the plaintiff was able to perform the duties associated with the modified cashier job for Family Dollar, this was a make-work position that is not readily available in the competitive marketplace. Therefore, it does not establish what, if any, wage earning capacity the plaintiff retains.
8. As a direct and natural result of her 3 September 1994 admittedly compensable injury by accident, the plaintiff has sustained ongoing severe depression.
9. A multidisciplinary inpatient residential pain management program followed up by outpatient therapy is reasonably necessary to help relieve the plaintiff's ongoing pain and depression.
10. The plaintiff has not reached maximum medical improvement with regard to the back injury and depression resulting from her 3 September 1994 admittedly compensable injury by accident.
11. As the result of her 3 September 1994 admittedly compensable injury by accident, the plaintiff has been unable to earn any wages in any employment for the period of 18 July 2001, through the present and continuing. There is insufficient evidence of record upon which to find that the plaintiff is permanently and totally disabled.
12. Vocational rehabilitation is not reasonably necessary as long as the plaintiff continues to experience a level of pain that requires her to have to rest for two days following two days of working.
 ***********
Based on the foregoing findings of facts, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The modified cashier job for Family Dollar was a make-work position that is not readily available in the competitive marketplace. Peoplesv. Cone Mills Corp., 316 N.C. 426, 342 S.E.2d 798 (1986). Therefore, that position does not establish what, if any wage earning capacity the plaintiff retains. Id.
2. As the result of her 3 September 1994 admittedly compensable injury by accident, the plaintiff is entitled to be paid by the defendant ongoing total disability compensation at the rate of $229.54 per week for the period of 18 July 2001, through the present and continuing until such time as she returns to work, or until further Order of the Commission. G.S. § 97-29. There is insufficient evidence of record upon which to find that the plaintiff is permanently and totally disabled. Id.
3. As the result of her 3 September 1994 admittedly compensable injury by accident, the plaintiff is entitled to have the defendant pay for all related medical expenses incurred or to be incurred, including expenses associated with a multidisciplinary inpatient residential pain management program followed up by out patient therapy with which the plaintiff shall cooperate. G.S. §§ 97-25; 97-25.1.
4. Until further Order of the Commission following the submission and approval of a vocational rehabilitation plan, no such efforts shall be made by the defendants. G.S. § 97-25.
5. The parties have agreed upon an amount to which the defendant is entitled to a credit against any ongoing compensation. G.S. § 97-42.
 ***********
Based upon the foregoing findings of facts and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner, and enters the following:
 AWARD
1. The defendant shall to the plaintiff ongoing total disability compensation at the rate of $229.54 per week for the period of 18 July 2001, through the present and continuing until such time as she returns to work, or until further Order of the Commission. From the amounts having accrued, this compensation shall be paid to the plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein. The credit that the parties have agreed that the defendant may receive can only be received against any future permanent disability awards.
2. The defendants shall pay for all related medical expenses incurred or to be incurred, as the result of the plaintiff's admittedly compensable injury by accident, including expenses associate with a multidisciplinary inpatient residential pain management program followed up by out patient therapy, with which the plaintiff shall cooperate.
3. The plaintiff is not required to participate in any vocational rehabilitation program offered by the defendant until further order of the Industrial Commission.
4. A reasonable attorney fee of twenty-five percent of the compensation due the plaintiff under paragraph 1 of this AWARD is approved for the plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due the plaintiff under paragraph 1 of this AWARD shall be deducted from that sum and paid directly to the plaintiff's counsel. Thereafter every fourth check shall be sent directly to the plaintiff' counsel.
5. The defendant shall pay expert witness fees in the amount of $375.00 to Dr. Lee, $225.00 to Dr. Stutesman, $340.00 to Dr. Hissom, $350.00 to Dr. Ray and $325.00 to Dr. Dickerson.
6. The defendant shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER